NOTICE
This Order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

2022 IL App (4th) 220348-U

NOS. 4-22-0348, 4-22-0349 cons.

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
September 13, 2022
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| *In re* E.R. and A.H., Minors | ) | Appeal from the |
| | ) | Circuit Court of |
| (The People of the State of Illinois, | ) | Knox County |
| Petitioner-Appellee, | ) | Nos.  19JA16 |
| v. | ) | 19JA17 |
| Jodi M., | ) | |
| Respondent-Appellant). | ) | Honorable |
| | ) | Curtis S. Lane, |
| | ) | Judge Presiding. |

JUSTICE CAVANAGH delivered the judgment of the court.
Presiding Justice Knecht and Justice DeArmond concurred in the judgment.

**ORDER**

¶ 1    *Held*:  The appellate court affirmed, finding the trial court did not err in terminating respondent's parental rights.

¶ 2    The State filed petitions for adjudication of wardship concerning two minor siblings: A.H. (born November 20, 2007) and E.R. (born October 23, 2018). The minors were adjudicated neglected and subsequently made wards of the court. Thereafter, the State filed a petition to terminate the parental rights of the minors' mother, respondent Jodi M. The trial court found respondent to be unfit and further found it was in the minors' best interests to terminate her parental rights. She appeals, claiming the court erred by (1) finding her unfit and (2) finding termination of her parental rights was in the minors' best interests. We affirm.

¶ 3                                    I. BACKGROUND

¶ 4            On March 28, 2019, the State filed petitions for adjudication of wardship, alleging minors A.H. and E.R. were neglected by respondent and E.R.'s father, Jay R., who is not a party to this appeal. A.H.'s father did not participate in any of the proceedings, including this appeal.

¶ 5            Respondent had prior indicated reports in October 2018 and February 2019 regarding substance misuse and incidents of domestic violence by Jay against her and the minors. In February 2019, respondent obtained an order of protection (OP) for her and the minors against Jay. However, after two weeks, respondent allowed the OP to expire.

¶ 6            On March 22, 2019, respondent and the minors were residing at a shelter. Staff heard A.H. screaming from their room. When the staff members entered, they found respondent covering A.H.'s mouth to quiet his screams. Respondent had allowed Jay to enter their room through the window. A.H. was screaming due to his fear of Jay. The minors were taken into protective custody and placed with E.R.'s paternal aunt and uncle.

¶ 7            The petitions were filed after the Department of Children and Family Services (DCFS) received the report of Jay's contact with the family. The State alleged the minors were neglected and in an environment injurious to their welfare based upon the prior indicated reports, respondent's permitted and continued contact with Jay, the prior physical abuse inflicted upon respondent and the minors by Jay, and Jay's history of threatening to kill respondent and the minors.

¶ 8            On April 30, 2019, by stipulation, the trial court entered an adjudicatory order and on May 28, 2019, the court entered a dispositional order, finding respondent unfit and unable to care for the minors and making them wards of the court.

¶ 9 On August 13, 2021, the State filed a petition to terminate respondent's parental rights to each minor, alleging she was an unfit parent, as she failed to (1) make reasonable efforts to correct the conditions which were the basis for the removal of the minors between April 30, 2019, to present (750 ILCS 50/1(D)(m)(i) (West 2020)), (2) make reasonable progress toward the return of the minors to her care within any nine-month period following the adjudication of neglect, namely between April 30, 2019, to present (750 ILCS 50/1(D)(m)(ii) (West 2020)), (3) protect the minors from conditions within their environment injurious to their welfare (750 ILCS 50/1(D)(g) (West 2020)), and (4) maintain a reasonable degree of interest, concern, or responsibility as to the minors' welfare (750 ILCS 50/1(D)(b) (West 2020)).

¶ 10 On February 15, 2022, the trial court held respondent's fitness hearing. The court considered the testimony of Randall Aldridge, a placement caseworker for The Center for Youth and Family Solutions (CYFS). He testified he was the caseworker from March 2019 to December 2020. The minors were taken into shelter care out of DCFS's concern for their safety based on domestic violence. Aldridge testified, according to respondent's case plan, she was to (1) participate in a mental health assessment, (2) participate in substance abuse services, (3) participate in domestic violence services, which included a requirement that she develop a safety plan for relationships, (4) obtain suitable housing, (5) become financially able to support herself and the minors, and (6) participate in random drug screens.

¶ 11 Aldridge testified that between May 1, 2020, and February 1, 2021, respondent had not developed a safety plan for herself or the minors, which included obtaining an OP, because, according to respondent, she feared retaliation from Jay. She participated in only 4 of 20 random drug screens, of which she completed 2, testing positive in June 2020, and failed to complete 2, which also registered as positives. She failed to appear at 16 of them.

¶ 12        On cross-examination, Aldridge noted respondent had obtained public housing, completed a mental health assessment, participated in visits, and successfully completed the domestic violence course. With clarification from the trial court's questions, Aldridge explained respondent did not (1) participate in substance abuse services, (2) participate in the recommended mental health counseling, (3) establish the required safety plan as requested by the domestic violence provider, and (4) cooperate in having her residence evaluated for safety and suitability.

¶ 13        No other testimony was presented. After considering the evidence and arguments of counsel, the trial court found respondent to be unfit. The court stated:

> "You know, the reality here is the adjudication was April 30[ ], 2019. We're basically almost three years down the road. I didn't really hear any evidence that the mother had completed all the services, especially in light of the—the nine-month time period that was testified to.
>
> I agree with Ms. Nelson [(respondent's attorney)]. This was an awfully close call. I think the mom did do certain things, but, you know, the reality is that she is no closer to the return home of the children by the completion of the service plan within the required nine-month period.
>
> So[,] I believe the State barely met the clear and convincing evidence standard. I believe that the mother is unfit. She is not closer for the return home for the children, despite the services being provided, and I will grant at least the fitness stage and—and find her unfit by clear and convincing evidence."

¶ 14        On April 5, 2022, the trial court conducted the best-interest hearing, where it heard testimony from CYFS family support worker Kamille Justus and respondent. Justus testified she supervised visits and had visited the foster home and, based upon what she had witnessed, she

- 4 -

believed respondent's parental rights should be terminated. The minors have been in their current foster home since March 27, 2019. She said A.H. has not wanted to see respondent since July 2021. He does not feel safe with respondent and advised he was advocating for his younger siblings as well. The minors resided with E.R.'s paternal aunt and uncle, where A.H. is "very healthy and happy." Justus testified A.H. is safe, well-cared for, thriving, and bonded in the foster home. She said he needs counseling due to past traumas and the foster parents have initiated his involvement in such counseling. The foster parents "really advocate for him." Justus described the foster placement as stable and permanent.

¶ 15    Justus described E.R. as a "feisty young man." She said he does not refer to respondent as his mother but refers to his foster parents as "mother and father." Justus said E.R. was "rambunctious and fun." He was "very safe and healthy in the home." He was well bonded with the entire foster family and was thriving. He was well cared for in this stable and permanent placement. Justus said E.R. has difficulty regulating his emotions, which takes an extra amount of care but, the foster parents were seeking professional assistance for him.

¶ 16    Respondent testified she was visiting the minors every two weeks. Once A.H. stopped visiting, respondent expressed her desire to visit or call him. CYFS advised he did not want to visit her, and they could not force him. She said she was participating in substance abuse services at Bridgeway and counseling. She said she was doing the best she could. She secured appropriate housing in an apartment two years ago, but she said she would not bring the minors to this apartment because it is a one-bedroom. She would relocate.

¶ 17    Respondent testified about her last visit with A.H. when he "stayed after and talked to [her]." Respondent said she was not expecting the talk. She said she did not intentionally "shut him down," but she said his "perception of a lot [of] things [was] going to be different than the

- 5 -

adult's obviously." She said she was not "saying his feelings [were] not founded" and he was "entitled to them." Respondent said she was trying to establish a bond with E.R., which had "been better lately." She said he does not refer to her as "mom," which really bothers her, but she "would never try and correct that in him as he's confused as it is."

¶ 18　　　　After considering the testimony, the best-interest reports, and arguments of counsel, the trial court determined it was in the best interests of the minors to terminate respondent's parental rights. In particular, the court noted E.R. had been in placement for "far more than the majority of his life" and A.H. had started to divulge trauma, which impacted his willingness to visit respondent. Although the court did not like "that a 14-year-old or any juvenile [was] allowed to determine whether or not they want to visit *** without some type of counselor recommending a termination of that." Nevertheless, the court agreed it may not have been in A.H.'s best interest to continue visits with respondent. The court entered an order terminating respondent's parental rights.

¶ 19　　　　This appeal followed.

¶ 20　　　　　　　　　　　　II. ANALYSIS

¶ 21　　　　On appeal, respondent alleges the trial court erred (1) in finding she was unfit and (2) in determining termination of her parental rights was in the minors' best-interests. She claims both findings were against the manifest weight of the evidence. We affirm.

¶ 22　　　　　　　　　　　　A. Unfitness Finding

¶ 23　　　　Initially, we note that in E.R.'s appeal, the State argues respondent has forfeited her claims relating to the reasonable-efforts and reasonable-progress grounds of unfitness for not sufficiently developing an argument as to each ground in her brief as required by Illinois Supreme Court Rule 341(h)(7) (eff. Oct. 1, 2020). Because we find respondent has sufficiently set forth her

arguments with regard to these grounds and because the record is clear, we are able to address respondent's claims on the merits despite the State's assertion.

¶ 24 In a proceeding to terminate parental rights, the State must prove parental unfitness by clear and convincing evidence. *In re N.G.*, 2018 IL 121939, ¶ 28. A trial court's finding of parental unfitness will not be disturbed on appeal unless it is against the manifest weight of the evidence. *Id.* ¶ 29. A finding is against the manifest weight of the evidence "only where the opposite conclusion is clearly apparent." *Id.*

¶ 25 Here, the trial court found respondent to be an unfit parent on four grounds: (1) she failed to make reasonable efforts to correct the conditions that were the basis for the removal of the minors from her care "within [nine] months of an adjudication of neglect being April 30, 2019[,] to [p]resent" (750 ILCS 50/1(D)(m)(i) (West 2020)); (2) she failed to make reasonable progress toward the return of the minors to her care during any nine-month period following the adjudication of neglect, namely between April 30, 2019, "to present" (750 ILCS 50/1(D)(m)(ii) (West 2020)); (3) she failed to protect the minors from conditions within their environment injurious to the minors' welfare (750 ILCS 50/1(D)(g) (West 2020)); and (4) she failed to maintain a reasonable degree of interest, concern, or responsibility as to the minors' welfare (750 ILCS 50/1(D)(b) (West 2020)).

¶ 26 "Reasonable progress" has been defined as "demonstrable movement toward the goal of reunification." (Internal quotation marks omitted.) *In re C.N.*, 196 Ill. 2d 181, 211 (2001). This is an objective standard. *In re F.P.*, 2014 IL App (4th) 140360, ¶ 88. The benchmark for measuring a parent's progress toward reunification "encompasses the parent's compliance with the service plans and the court's directives, in light of the conditions which gave rise to the removal of the child, and in light of other conditions which later become known, and which would prevent

the court from returning custody of the child to the parent." *C.N.*, 196 Ill. 2d at 216-17. Reasonable progress exists when the trial court can conclude it will be able to order the child returned to parental custody in the near future. *In re L.L.S.*, 218 Ill. App. 3d 444, 461 (1991).

¶ 27 Here, the trial court specifically found, despite respondent's completion of some of her recommended services, it was not close to returning the minors to respondent's custody. Indeed, respondent participated in visitation, a mental health assessment, and a domestic violence program. However, she failed to engage and successfully complete mental health counseling, she was not successful in her random drug screens, she failed to participate in a substance abuse program, she did not cooperate with an evaluation of her housing, and she failed to implement a safety plan with regard to her domestic violence service task. Because she had a history with DCFS relating to "substance misuse" and domestic violence, those two services in particular were of utmost importance. Respondent's failure to fully address those issues justified the court's specific finding of no near-future plan to return the minors to respondent's custody.

¶ 28 Given this evidence, the trial court could have reasonably concluded respondent's progress was not sufficiently demonstrable or of such a quality that the court would be able to return the children to her custody in the near future. See *In re Ta. T.*, 2021 IL App (4th) 200658, ¶ 51. Accordingly, the court's finding respondent had not made reasonable and substantial progress within the meaning of section 1(D)(m)(ii) of the Adoption Act (750 ILCS 50/1(D)(m)(ii) (West 2020)), was not against the manifest weight of the evidence.

¶ 29 We need not address the other grounds of unfitness, as the State is not required to prove every ground it has alleged for finding a parent unfit. That is, a parent's rights may be terminated if even a single alleged ground for unfitness is supported by clear and convincing evidence. *In re Gwynne P.*, 215 Ill. 2d 340, 349 (2005).

¶ 30                                    B. Best-Interest Finding

¶ 31            Upon a finding of parental unfitness, the proceedings move to a best-interest hearing. At the best-interest hearing, the trial court's focus shifts to the minors' interests in securing "a stable, loving home life." *In re D.T.*, 212 Ill. 2d 347, 364 (2004). When a best-interest decision must be made, the court shall consider factors listed in section 1-3 of the Juvenile Court Act (705 ILCS 405/1-3(4.05) (West 2020)). These factors include the minors' physical safety and welfare, the development of the minors' identity, the minors' background and ties, the minors' sense of attachments including the sense of security, familiarity, and continuity of affection, the minors' wishes and long-term goals, and the preferences of those available to care for the child. *Id.* A parent's wishes to continue the relationship with the minors yields to the minors' interests. *D.T.*, 212 Ill. 2d at 364.

¶ 32            The trial court may terminate parental rights only upon finding the State proved, by a preponderance of the evidence, the termination of those rights is in the minors' best interests. *In re Jay H.*, 395 Ill. App. 3d 1063, 1071 (2009). We will not disturb a best-interest determination unless it is against the manifest weight of the evidence. *Id.* A best-interest determination is against the manifest weight of the evidence only if it is clearly evident the State failed to carry its burden of proof or, in other words, if the finding is "unreasonable, arbitrary, or not based on the evidence presented." (Internal quotation marks omitted.) *In re J.H.*, 2020 IL App (4th) 200150, ¶ 85.

¶ 33            The court considered the testimony of Justus and respondent. Justus testified the minors had been in the same foster home for three years. For E.R., that placement had been for the majority of his life. Both minors were bonded with their foster parents and were thriving and happy in the home. Justus stated no concerns as it related to this placement, which was considered a permanent placement.

¶ 34    According to Justus, A.H. had suffered trauma while in respondent's care and was now addressing those issues through counseling. The foster parents initiated his involvement in such counseling and "really advocate for him." A.H. has expressed his desire to remain in the foster home where his life is stable, and he feels safe and secure.

¶ 35    Justus described E.R. as "feisty" and "rambunctious" with some issues regulating his emotions. His behavior takes extra care, but the foster parents were seeking professional assistance for him. Justus said E.R. refers to his foster parents as "mother and father." He was "very safe and healthy in the home" and, like A.H., was bonded with the entire foster family. E.R. was thriving, well cared for, safe, and secure in this stable and permanent placement.

¶ 36    Considering the evidence in light of the best interests of the minors, we find the trial court's order terminating respondent's parental rights was not against the manifest weight of the evidence.

¶ 37                     III. CONCLUSION

¶ 38    For the reasons stated, we affirm the trial court's judgment.

¶ 39    Affirmed.